IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIE H. MARTINEZ, | § | CASE NO. 10-53969 |
| | § | (Chapter 11) |
| Debtor. | § | |

---

SECOND AMENDED PLAN OF REORGANIZATION PROPOSED BY DEBTOR

---

LAW OFFICE OF IVAN RAMIREZ, PLLC
P.O. BOX 702086
SAN ANTONIO, TEXAS 78270
ATTORNEY FOR MARIE MARTINEZ
DEBTOR & DEBTOR-IN-POSSESSION

DATED: JULY 6, 2011

TABLE OF CONTENTS

ARTICLE 1   Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE 2   Definitions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE 3   Classification of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE 4   Provision for Payment of Administrative Expenses (Unclassed). . . . . . . . . . . . 4

ARTICLE 5   Provisions for Treatment of Secured Claim Held by Notes We Buy, LLC . . . . . . 5

ARTICLE 6   Provisions for Treatment of Secured Claim Held by Encinal Holdings, LLC.. . . . . 6

ARTICLE 7   Provisions for Treatment of Secured Claim Held by Texas Community Bank. . . . 7

ARTICLE 8   Provisions for Treatment of Secured Claim Held by Compass Bank. . . . . . . . . . . 7

ARTICLE 9   Provisions for Treatment of Secured Claim Held by Compass Bank. . . . . . . . . . . 7

ARTICLE 10  Provisions for Treatment of Secured Claim Held by GEMB. . . . . . . . . . . . . . . . 8

ARTICLE 11  Provisions for Treatment of Secured Claim Held by IRS. . . . . . . . . . . . . . . . . . 8

ARTICLE 12  Provisions for Treatment of Secured Claim Held by Ally Financial. . . . . . . . . . . 8

ARTICLE 13  Provisions for Treatment of Secured Claim Held by Bexar County. . . . . . . . . . . 8

ARTICLE 14  Provisions for Treatment of General Unsecured Claims Held Against Debtor. . . . 9

ARTICLE 15  Provisions for Treatment of General Unsecured Claim Held In Litigation Class. . 9

ARTICLE 16  Cramdown of Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE 17  Means for Execution of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE 18  Procedures for Treatment of Disputed Claims. . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE 19  Acceptance or Rejection of Plan: Effect of Rejection by
            One or More Classes of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE 20  Identification of Claims Impaired and Not Impaired by the Plan. . . . . . . . . . . . 10

ARTICLE 21  Executory Contracts and Unexpired Leases. . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE 22   Provisions Covering Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE 23   Procedures for Resolving Disputed Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE 24   Committees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE 25   Provision for Execution and Supervision of the Plan. . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE 26   Provisions for Management. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE 27   Events of Default. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE 28   Additional Default Provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE 29   Miscellaneous Provisions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE 30   Payment of United States Trustee Quarterly Fees and
              Submission of Statements of Disbursements. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE 1. INTRODUCTION

THIS PLAN OF REORGANIZATION (the "Plan") is proposed by MARIE MARTINEZ (hereinafter referred to as "Debtor" unless otherwise specified) pursuant to Section 1121(a), title 11, United States Code, for the resolution of Debtor's outstanding creditor claims.

ARTICLE 2. DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below:

2.1. Administration Claimant: Any person entitled to payment of an Administration Expense.

2.2. Administration Expense: Any cost or expense of administration of the chapter 11 case entitled to priority under Section 507(a)(1) and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, and actual and necessary expenses incurred post-petition by the Debtor-in-Possession, any indebtedness or obligations incurred by or assessed against the Debtor-in-Possession, or for the acquisition or lease of property or for providing of services to the Debtor-in-Possession, and allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

2.3. Allowed Claim: Any claim against the Debtor, proof of which was filed on or before the last date designated by the Bankruptcy Court as the last date for filing proofs of claims, if no proof of claim is filed which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed or such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall not, for the purposes of computation or Distributions under the Plan, include post-petition interest on the amount of such Claim.

2.4. Allowed Priority Tax Claim: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.5. Allowed Secured Claim: A Secured Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.6. Allowed Unsecured Claim: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.7. Bankruptcy Code: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

2.8. Bankruptcy Court: The unit of the United States District Court for the Western District of Texas, San Antonio Division, having jurisdiction over the chapter 11 case, or in the event such court ceases to exercise jurisdiction over the chapter 11 case, such court or adjunct thereof that exercises jurisdiction over this chapter 11 case in lieu of the United States Bankruptcy Court for the Western District of Texas.

2.9. Bankruptcy Rules: The Rules of Bankruptcy Procedure as amended, as applicable to the chapter 11 case.

2.10. Cash: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

2.11. Chapter 11 Case: This cases under chapter 11 of the United States Bankruptcy Code in which Marie Martinez is the Debtor-in-Possession.

2.12. Claim: Any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

2.13. Committee: Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

2.14. Confirmation Date: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

2.15. Confirmation Order: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.16. Creditor: Any person that has a Claim against the Debtor that arose on or before the Petition Date.

2.17. Debtor-in-Possession: Marie Martinez, as Debtor-in-Possession.

2.18. Debtor: Marie Martinez, the Debtor under this chapter 11 case.

2.19. Distributions: The property required by the Plan to be distributed to the holders of Allowed Claims.

2.20. Effective Date: The first day of the month following ten days after the Confirmation Date but in no case earlier than November 1, 2011.

2.21. Final Order: An order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

2.22. Petition Date: October 11, 2010, the date the chapter 11 petition for relief was filed.

2.23. Plan: This Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

2.24. Priority Non-Tax Claim: Any claim other than Administrative Expense or a Priority Tax Claim to the extent entitled to priority and payment under Section 507(a) of the Bankruptcy Code.

2.25. Priority Tax Claim: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.26. Schedules: Schedules and Statement of Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

2.27. Unsecured Creditor: Any Creditor that holds a Claim which is not a Secured Claim.

ARTICLE 3. CLASSIFICATION OF CLAIMS

Claims are classified as follows:

3.1. Class 1 – Secured Claim held by Notes We Buy, LLC

3.2 Class 2 – Secured Claim held by Encinal Holdings, LLC

3.3 Class 3 – Secured Claim held by Texas Community Bank

3.4 Class 4 – Secured Claim held by Compass Bank

3.5. Class 5 – Secureed Claim held by Compass Bank

3.6 Class 6 – Secured Claim held by GEMB

3.7   Class 7 – Priority Unsecured Claim held by Internal Revenue Service

3.8   Class 8 – Secured Claim held by Ally Bank

3.9   Class 9 – Secured Claim held by Bexar County

3.10  Class 10 – General Unsecured Claims

3.10  Class 11 – General Unsecured Claim held in Litigation Class

ARTICLE 4. PROVISIONS FOR PAYMENT OF
ADMINISTRATION EXPENSES CLAIM
(UNCLASSED)

4.1.  100% Payment. On the Effective Date, each Allowed Administration Expense Claim shall be paid in full in Cash or upon such other terms as may be agreed upon by and between any Administration Claimant and the Debtor.

4.2.  Bar Date for Fee Claim. The Confirmation Order shall provide a bar date for filing of claims by those entities asserting claims for compensation under Sections 330 and/or 503 of the Bankruptcy Code.

ARTICLE 5. PROVISIONS FOR TREATMENT
OF SECURED CLAIMS HELD BY NOTES WE BUY, LLC,
AGAINST THE DEBTOR (CLASS 1)

5.1   Class 1 is comprised of the secured claim of Notes We Buy, LLC ("NWB"), in the following amounts as of July 25, 2011:

| | |
|---|---|
| Principal: | $ |
| Interest: | $ |
| Late Fees: | $ |
| Collection Costs: | $ |
| Total Claim: | $ |

The claim of NWB is fully secured by a first position perfected lien against the real estate, improvements, fixtures, equipment and furniture owned by the Debtor and located at 14255 Blanco Road, San Antonio, Texas ("Office Building") and a first position perfected assignment of all funds of the Debtor on deposit at TexStar National Bank ("TexStar"), currently in the amount of $_____.

NWB acquired its claim from TexStar National Bank, which is evidenced, in part, by the following documents ("Loan Documents"):

5.1.1 Promissory Note dated August 21, 2008 in the original principal amount of $1,096,884.00 ("Note");

5.1.2 Deed of Trust, Security Agreement – Financing Statement dated August 21, 2008, recorded in Bexar County, Texas under Document No. 20080185574 ("Deed of Trust");

5.1.3 Guaranty Agreement dated August 21, 2008 executed by Marie H. Martinez;

5.1.4 An Assignment of Leases and Rents dated August 21, 2008 recorded in Bexar County, Texas under Document No. 20080185575;

5.1.5 UCC Financing Statement recorded in Bexar County, Texas under Document No. 200818756; and

5.1.6 Assignment of Deposit Account dated August 21, 2008.

5.2 The lien and assignment of NWB are specifically confirmed and carried forward post confirmation.

5.3 All provisions of the Loan Documents evidencing the claim of NWB shall continue in force post confirmation except those specifically modified by Plan treatment.

5.4 Interest on the NWB secured claim shall accrue at the annual of 6.5% from the Effective Date.

5.5 Beginning on the 21st day of the month in which the Effective Date occurs or, if the Effective Date occurs alter the 21st day of the month, the 21st day the next month, the Debtor shall resume the monthly payments required by the Note plus an escrow payment equal to one-twelfth (1/12) of the property taxes assessed against the Office Building.

5.6 Notwithstanding any other provision of the Loan Documents or the Plan, including the Deed of Trust, if an event of default occurs under the Loan Documentation, including the Note and Deed of Trust, NWB shall be entitled, without further notice, to invoke all of its remedies provided by the Loan Documents, including but no limited to foreclosure of its lien against the Office Building and application of the assigned finds to its claim.

5.7 In the event that the Debtor files a subsequent case under title 11, or an involuntary petition is filed against the Debtor and an Order for Relief is entered, the Debtor unconditionally waives the automatic stay provided by 11 U.S.C. § 362 to permit NWB to pursue its remedies provided by the Loan Documents and state law for repossession and foreclosure of its collateral.

ARTICLE 6. PROVISIONS FOR TREATMENT OF SECURED CLAIM HELD
BY ENCINAL HOLDINGS AGAINST THE DEBTOR (CLASS 2)

6.1 Class 2 is comprised of the secured claim of Encinal Holdings ("EH") in the following amounts as of July 25, 2011:

| | |
|---|---|
| Principal: | $ |
| Interest: | $ |
| Late Fees: | $ |
| Collection Costs: | $ |
| Total Claim: | $ |

The claim of EH is fully secured by a first position perfected lien against the real estate, improvements, fixtures, equipment and furniture owned by the Debtor and located at Encinal, Texas ("Encinal Property") more specifically described in the Deed of Trust identified below.

EH acquired its claim from TexStar National Bank, which is evidenced, in part, by the following documents ("Loan Documents"):

6.1.1 Promissory Note dated May 29, 2009 in the original principal amount of $1,200,000.00 ("Note");

6.1.2 Deed of Trust, Security Agreement – Financing Statement dated May 29, 2008, recorded in La Salle County, Texas ("Deed of Trust"); and

6.1.3 Guaranty Agreement dated May 29, 2008 executed by Marie H. Martinez.

6.2 The lien and assignment of EH are specifically confirmed and carried forward post confirmation.

6.3 All provisions of the Loan Documents evidencing the claim of NWB shall continue in force post confirmation except those specifically modified by Plan treatment.

6.4 Interest on the EH secured claim shall accrue at the annual of 6.5% from the Effective Date. The EH secured claim shall mature on _____, 2016, when all outstanding sums owed under the Loan Documents shall be due and payable.

6.5 Beginning on the 21st day of the month in which the Effective Date occurs or, if the Effective Date occurs alter the 21st day of the month, the 21st day the next month, the Debtor shall resume the monthly payments required by the Note plus an escrow payment equal to one-twelfth (1/12) of the property taxes assessed against the Office Building.

6.6 Notwithstanding any other provision of the Loan Documents or the Plan, including the Deed of Trust, if an event of default occurs under the Loan Documentation, including the Note and

   Deed of Trust, EH shall be entitled, without further notice, to invoke all of its remedies provided by the Loan Documents, including but no limited to foreclosure of its lien against the Office Building and application of the assigned finds to its claim.

6.7 In the event that the Debtor files a subsequent case under title 11, or an involuntary petition is filed against the Debtor and an Order for Relief is entered, the Debtor unconditionally waives the automatic stay provided by 11 U.S.C. § 362 to permit NWB to pursue its remedies provided by the Loan Documents and state law for repossession and foreclosure of its collateral.

## ARTICLE 7. PROVISIONS FOR TREATMENT
## OF SECURED CLAIMS HELD BY TEXAS COMMUNITY BANK
## AGAINST THE DEBTOR (CLASS 3)

7.1. Class 3 is comprised of the secured lien claims against Bekalar, Inc., totaling $1,294,000 held by Texas Community Bank on 69.855 acres of land in Encinal, Texas, a single family residence located at 328 Tulorosa Ridge, Helotes, Texas and a single family residence located at 1683 Timber Valley in Eagle Pass, Texas. The claims, which are guaranteed by Debtor, will be paid by Bekalar, Inc., in full as follows:

  Beginning on the Effective Date, the Bekalar, Inc., will make regular payments in a agreed amount of $10,000/month with the note amortized over a period of nineteen years at 6.5% interest per annum.

## ARTICLE 8. PROVISIONS FOR TREATMENT
## OF SECURED CLAIMS HELD BY COMPASS BANK
## AGAINST THE DEBTOR (CLASS 4)

8.1 Class 4 is comprised of the secured claim against Bekalar, Inc., held by Compass Bank secured by an office building located in Laredo, Texas owned by Bekalar, Inc. The claim, which is guaranteed by Debtor, will be paid in full and in cash as follows:

  Beginning on the Effective Date the claim of $36,997.77 will be paid by Bekalar in regular monthly payments of $249.81 over a period of twenty-five years at 6.5% interest per annum.

## ARTICLE 9. PROVISIONS FOR TREATMENT
## OF SECURED CLAIMS HELD BY COMPASS BANK
## AGAINST THE DEBTOR (CLASS 5)

9.1 Class 5 is comprised of a secured claim by Compass Bank secured by an office building located in Laredo, Texas owned by the Debtor but is being sold on a contract for deed. The claim will be paid in full and in cash as follows:

Beginning on the Effective Date the Debtor will make regular payments of $1,665/month with interest at 6.5%/annum over a period of twenty-five years.

## ARTICLE 10. PROVISIONS FOR TREATMENT OF SECURED CLAIMS HELD BY GEMB AGAINST THE DEBTOR (CLASS 6)

10.1    Class 6 is comprised of the secured claim held by GEMB for a boat located in Encinal, Texas. The payments are being made in the ordinary course of business by Debtor's ex-husband.

## ARTICLE 11. PROVISIONS FOR TREATMENT OF PRIORITY UNSECURED CLAIMS HELD BY IRS AGAINST THE DEBTOR (CLASS 7)

11.1    Class 7 is comprised of the priority unsecured claim held by the Internal Revenue Service for taxes. The claim will be paid in full and in cash as follows:

Beginning on the Effective Date the Debtor will make regular payments of $84/month to over a period of five years at 4% interest per annum.

## ARTICLE 12. PROVISIONS FOR TREATMENT OF SECURED CLAIMS HELD BY ALLY FINANCIAL AGAINST THE DEBTOR (CLASS 8)

12.1.   Class 8 is comprised of the secured claim held by Ally Financial for a vehicle owned by Debtor. The claim will be paid in full and in cash as follows:

Beginning on the Effective Date the Debtor will make regular payments of $802/month to over a period of five years at 6.5% interest per annum.

## ARTICLE 13. PROVISIONS FOR TREATMENT OF SECURED CLAIMS HELD BY BEXAR COUNTY AGAINST THE DEBTOR (CLASS 9)

13.1    Class 9 is comprised of the secured claim held by Bexar County for ad valorem taxes. The claim will be paid in full and in cash as follows:

Beginning on the Effective Date the Debtor will make regular payments of $847/month to over a period of five years at 12% interest per annum.

ARTICLE 14. PROVISIONS FOR TREATMENT
OF GENERAL UNSECURED CLAIMS
AGAINST THE DEBTOR (CLASS 10)

14.1. Class 10 is comprised of the general unsecured claims held various creditors for trade and personal consumer debt which the Debtor estimates is worth $177,465. The claims will be paid in cash as follows:

Beginning on the Effective Date the Debtor will make regular payments of $2,635.26/month to be paid pro rata to over a period of seven years at 6% interest per annum.

ARTICLE 15. PROVISIONS FOR TREATMENT
OF LITIGATION CLASS (CLASS 11)

14.1. Class 11 is comprised of the disputed claim held by Texas Wire as a result of a lawsuit for damages that was pending at the time the petition for relief was filed. The Debtor has filed an objection to claim. Further, the Debtor contends that the claim is not worth more than $200,000. The claim as it may ultimately be determined will be paid in cash as follows:

Beginning on the Effective Date the Debtor will make regular payments to be paid
to over a period of ten years at 5% interest per annum.

ARTICLE 15. CRAMDOWN OF PLAN

15.1. In the event that one or more classes of impaired claims does not approve the Plan by the requisite vote, the Debtor shall seek confirmation of the Plan pursuant to the provisions of Section 1129(b) of the Bankruptcy Code.

ARTICLE 16. MEANS FOR EXECUTION OF THE PLAN

16.1. Beginning on the Effective Date, the Debtor shall continue its business of buying, developing and selling real property. It will also collect rent from its office building. The proceeds shall be allocated to pay the underlying collateral on a by class basis, with the excess proceeds retained by the Debtor for general business operating expenses, including salaries.

16.2. After all allowed claims are paid in full, the insiders will begin receiving payment of their claims.

ARTICLE 17. PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

17.1. Debtor and any party in interest shall have the authority to object to and contest the allowance of any Claims filed with the Bankruptcy Court in respect of any Claims listed as disputed, contingent or unliquidated on the Debtor's Schedules, except claims otherwise

        treated by the Plan or previously allowed or disallowed by Final Order of the Bankruptcy Court.

17.2.    If the Plan provides for any payment under the Plan, all allowed Claims will be paid pursuant to the applicable terms.

## ARTICLE 18. ACCEPTANCE OR REJECTION OF PLAN: EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

18.1.    Impaired Classes to Vote. Each impaired class of Creditors with Claims against any of the Debtor's estate shall be entitled to vote separately to accept or reject the Plan.

18.2.    Any member of a class that is proposed to receive nothing under the Plan is deemed to have rejected the Plan is not permitted to vote on the Plan.

18.3    Acceptance by Class of Creditors. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of such class that have accepted or rejected the Plan.

18.4.    Cramdown. In the event that any impaired class of Creditors with Claims against any of the Debtor's estate fails to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor shall request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

## ARTICLE 19. IDENTIFICATION OF CLAIMS NOT IMPAIRED OR IMPAIRED BY THE PLAN

19.1    Unimpaired Classes. Class are unimpaired under the Plan.

19.2    Impaired Classes to Vote on Plan. The Claims in Classes specified in Classes 1 through 10 of the Plan are impaired and therefore entitled to accept or reject the Plan.

19.3.    A class of claims is impaired when a plan does not leave unaltered the legal, equitable, and contractual rights to a claim. Shareholder interests are also impaired when their legal and equitable interests are not left unaltered.

19.4    Controversy Concerning Impairment. In the event of a controversy as to whether any Creditors or class of Creditors are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE 20. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

20.1    Assumption of Executory Contracts Under the Primary Plan. In the event of the Confirmation of the Plan, any executory contracts or unexpired leases not rejected by the Debtor with the

Bankruptcy Court prior to the Confirmation Date or which are not the subject of a motion to reject the same pending as of the Confirmation Date shall be deemed to have been assumed by the Debtor upon the Confirmation Date, in accordance with Section 365 of the Bankruptcy Code.

## ARTICLE 21. PROVISIONS COVERING DISTRIBUTIONS

21.1. Payments Made On The Effective Date. Payments to be made by the Debtor or Bekalar, Inc., shall be made beginning on the Effective Date, or as may be ordered by the Bankruptcy Court.

21.2. Method of Payment. Payments to be made by the Debtor or Bekalar, Inc., pursuant to the Plan shall be made from proceeds for the sale of Debtor's assets with a check drawn on a domestic bank or by wire transfer from a domestic bank.

21.3. Payment to be Made by the Debtor. Distributions to be made to Creditors under the Plan shall be made by the Debtor or Bekalar, Inc.

## ARTICLE 22. PROCEDURES FOR RESOLVING DISPUTED CLAIMS

22.1. Bar Date for Objections to Claims. Unless otherwise ordered by the Court, after notice and a hearing, objections to Claims shall be made and filed by the Debtor or any party in interest and shall be served upon each holder of each of the Claims to which objections are made (and upon the Debtor's attorney if the Debtor is not the objecting party) and filed with the Bankruptcy Court as soon as practicable, but in no event later than 90 days subsequent to the Effective Date.

22.2. Prosecution of Objections to Claims. The objecting party shall litigate to judgment, settle or withdraw objections to Disputed Claims.

## ARTICLE 23. COMMITTEES

23.1. Termination. On the Confirmation Date, all Committees then in existence, if any, shall terminate.

## ARTICLE 24. PROVISIONS FOR EXECUTION AND SUPERVISION OF THE PLAN

24.1. Retention of Jurisdiction. The Bankruptcy Court shall retain and have exclusive jurisdiction over the chapter 11 case for the following purposes:

    a. to determine any and all objections to the allowance of Claims;

      b.      to determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which any may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

      c.      to determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Confirmation Date, except as provided in the Confirmation Order;

      d.      to consider any modifications of the Plan, any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

      e.      to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, to include disputes between classes of claimants under the Plan regarding allocations or payment of Distribution hereunder;

      f.      to consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtor's estate;

      g.      to issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code; and

      h.      to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order, including, but not limited to, extending deadlines and time limits provided in the Plan.

24.2.    Amendment of Plan. The Plan may be amended by the Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

## ARTICLE 25. PROVISIONS FOR MANAGEMENT

25.1.    Debtor is an individual and thus there is no provision for management.

## ARTICLE 26. EVENTS OF DEFAULT

26.1.    In the event that the Debtor defaults under the provisions of the Plan (as opposed to a default under documentation executed in implementing the terms of the Plan, which documents shall provide independent bases for relief), any creditor or party in interest desiring to assert such a default shall provide the Debtor with written notice of the alleged default. The Debtor shall have 30 days from receipt of the written notice in which to cure the default. Such notice shall be delivered by certified mail, return receipt requested to the attorney for the Debtor at the address stated on the final page hereof. If the default is not cured, any creditor or party in

interest may thereafter file and serve upon attorney for the Debtor a motion to compel compliance with applicable provisions of the Plan. The Bankruptcy Court, upon finding a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan.

26.2 Alternatively, creditors may resort to applicable non bankruptcy law upon default and failure to cure by the Debtor.

## ARTICLE 27. ADDITIONAL DEFAULT PROVISIONS

27.1 A failure by the Debtor to make a payment to the IRS pursuant to the terms of the plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the 15th of each month; if there is a default as to the IRS, IRS must send written demand for payment to the Debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the Debtor can receive up to five (5) notice of default from the IRS, the fifth (5th) default cannot be cured and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority and unsecured general.

27.2. The IRS is bound by provisions of the confirmed plan and is barred under 11 U.S.C. § 1141 from taking any collection action against the Debtor for pre-petition claims during the duration of the plan (provided there is no default as to the IRS). The period of limitations of collection remains suspended under 26 U.S.C. § 6503(h) for tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the IRS having been made; or (2) 30 days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

## ARTICLE 28. MISCELLANEOUS PROVISIONS

28.1. Discharge of Debtor. All Claims are proposed to be paid in full thus the Debtor does not anticipate to need a discharge under this Plan now will she be seeking a discharge thus she will not be receiving a discharge.

28.2. Title to Assets; Discharge of Liabilities. Except as otherwise provided by the Plan, on the Confirmation Date, title to all assets and properties dealt with by the Plan shall vest in the post-confirmation Debtor in accordance with Section 1141 of the Bankruptcy Code, subject to all Claims as indicated above. Should the case be converted to one under chapter 7 the assets will re-vest to the estate.

28.3. Section Headings. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

28.4. Quarterly Reports. The Debtor proposes to provide a quarterly report to all unsecured creditors, and any other party requesting said report, describing all sales conducted during the reporting period; the debts paid to the holders of any secured claims on the property sold during that period; the net proceeds from the sales; all other operating expenses during that period, including any salary paid to Mr. Theroux; and the distributions made to the unsecured creditors.

ARTICLE 29. PAYMENT OF UNITED STATES TRUSTEE QUARTERLY FEES
AND SUBMISSION OF STATEMENTS OF DISBURSEMENTS

29.1 The Debtor shall timely pay on the Effective Date all pre-confirmation quarterly fees owed to the United States Trustee. The Reorganized Debtor also shall timely pay post-confirmation quarterly fees assesses pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing these chapter 11 cases, or enters an order either converting these cases to cases under chapter 7 or dismissing the cases. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements for each quarter, or portion thereof, that these chapter 11 cases remain open in a format prescribed by the United States Trustee.

/s/ *Marie Martinez*

_____
Marie Martinez

Law Office of Ivan Ramirez, PLLC

/s/ *Ivan Ramirez*

_____
Ivan Ramirez
P.O. Box 702086
San Antonio, Texas 78270
210.448.7755 Telephone
210.448.7756 Facsimile
Attorney for Debtor